**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**NARINDER M. GUPTA, M.D.,**
*individually and on behalf of* **PAIN**
**MANAGEMENT SURGI-GROUP, LLC,**
**AND BONNIE ALFORD**

                                                            **CIVIL ACTION**

**VERSUS**
                                                            **NO. 24-404-JWD-SDJ**

**LOUISIANA HEALTH SERVICE &**
**INDEMNITY COMPANY, d/b/a BLUE**
**CROSS AND BLUE SHIELD OF**
**LOUISIANA AND HMO LOUISIANA,**
**INC.**

### RULING AND ORDER

This matter comes before the Court on *Plaintiffs' Motion for Reconsideration/New Trial* ("*Motion for Reconsideration*") (Doc. 52), filed by Plaintiffs Narinder M. Gupta, M.D. ("Gupta"), individually and on behalf of Pain Management and Surgi-Group, LLC, and Bonnie Alford (collectively, "Plaintiffs"). Defendants Louisiana Health Service and Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. (collectively, "Defendants" or "BCBSLA") oppose this motion. (Doc. 54.) Plaintiffs have filed a reply. (Doc. 57.) The Court has carefully considered the law, the *Amended Motion to Vacate Arbitration Award* ("*Amended Motion*") (Doc. 12), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Plaintiffs' motion is denied.

I.     **RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs and Defendants participated in arbitration on December 21 and 22, 2023.[1] (Doc. 1-1 at 2.) Defendants initiated this arbitration based on state law claims arising out of a 2019 Physician Agreement, including breach of contract. (Doc. 1-1 at 4–5 (referencing La. R.S.

---

[1] The above factual allegations come primarily from Plaintiffs' *Amended Motion* (Doc. 12) and Plaintiffs' *Memorandum in Support of Motion to Vacate Arbitration Award* (Doc. 1-1).

§ 22:1838); Doc. 1-3 at 3.) According to Plaintiffs, the issue at arbitration was whether Defendants could "recoup" funds "without first providing [Plaintiff Gupta] and [his] patients notice of [Defendants'] intent to recoup . . . , as mandated by both state and federal statutes, and the parties' contractual agreement" (i.e., the 2019 Physician Agreement). (Doc. 1-1 at 3.)

On February 22, 2024, Arbitrator Melinda Jayson ("the Arbitrator") awarded Defendants the total recoupment amount. (Doc. 1-3 at 3, 13–14.) Plaintiffs then moved to vacate the arbitral award on the grounds that the Arbitrator failed to "join indispensable parties" and thus did not "hear evidence pertinent and material to the controversy," as required by the Federal Arbitration Act ("FAA"), specifically 9 U.S.C. § 10(a)(3). (Doc. 12 at 2–3.) Relatedly, Plaintiffs averred that the Arbitrator "so imperfectly executed her arbitral powers that 'a mutual, final, and definite award upon the subject matter submitted was not made' pursuant to 9 U.S.C. § 10(a)(4)." (*Id.* at 3.)

Plaintiffs filed their original *Motion to Vacate Arbitration Award* (Doc. 1) in this Court on May 22, 2024. This motion and the accompanying *Memorandum in Support of Motion to Vacate Arbitration Award* (Doc. 1-1) did not directly address this Court's jurisdiction, dealt primarily with state law (e.g., La. R.S. § 22:1838), and made mostly passing references to the Employee Retirement Income Security Act of 1974 ("ERISA"), always in the context of the dispute underlying the arbitration. (*See, e.g.*, Doc. 1 at 1–2; Doc. 1-1 at 11 ("[*Defendants'*] *procedure* violates Louisiana state law and ERISA obligations . . . ." (emphasis added)); *id.* at 12 (discussing the underlying "claims governed by ERISA" and arguing that the recoupment remedy sought by Defendants at arbitration "was preempted by ERISA and/or constituted an effort to cross-plan offset in violation of ERISA").)

On June 12, 2024, Plaintiffs filed an *Amended Motion* (Doc. 12). This motion asserted that the "overwhelming majority of claims as to which [Defendants] sought recoupment arose under

2

group employee health benefit plans governed by ERISA." (Doc. 12 at 2.) It also argued that

ERISA preempted "[t]he recoupment remedy recognized by La. R.S. 22:1838."[2] (*Id.*) The motion

noted that ERISA and La. R.S. § 22:1838 both "require notice of an adverse benefit determination

to an impacted plan beneficiary." (*Id.*) According to Plaintiffs, no such notice was provided. (*Id.*)

The *Amended Motion* included the following statement of jurisdiction:

> The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. [§] 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States[,] and [ERISA], 29 U.S.C. [§] 1132(e)(1) and . . . (f), which provides the district courts with jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan or to clarify a plan participant's rights under a group health benefit plan and/or to address equitable remedies, including injunction, for breaches of fiduciary duties arising in connection with the administration of such employee welfare benefit plans, as well as failures to provide (1) required notices to participants and beneficiaries, (2) an opportunity to appeal, and (3) information related to the particular welfare benefit plan at issue in this case.

(*Id.* at 1–2.)

Defendants moved to dismiss Plaintiffs' *Amended Motion* for lack of subject matter

jurisdiction. (Docs. 16, 28.) After the parties had briefed the issue in full, the Court granted

Defendants' motion, dismissing Plaintiffs' claims without prejudice, (Doc. 50 at 11–12), and

entering a judgment to that effect, (Doc. 51). In granting Defendants' motion, the Court explained

that the *Amended Motion*'s statement of jurisdiction required the Court to "look through" to the

underlying dispute, in contravention of *Badgerow v. Walters*, 596 U.S. 1 (2022). (Doc. 50 at 11.)

Thus, an independent basis for federal jurisdiction did not appear on the face of the *Amended

Motion*. (*See id.* at 10–11 (determining that "any attempted assertion of independent federal

jurisdiction [wa]s an attempt to relitigate" the underlying dispute).) Rather, the *Amended Motion*

"merely s[ought]" vacatur, invoking 9 U.S.C. § 10. (*Id.*)

---

[2] In their *Memorandum in Support of Motion for Reconsideration*, Plaintiffs "agree that courts are not permitted to look through to the underlying case and determine whether a claim was preempted by ERISA." (Doc. 52-1 at 4.)

## II.    PARTIES' ARGUMENTS

### A.    Plaintiffs' *Motion for Reconsideration* (Doc. 52)

Plaintiffs now move for reconsideration of this Court's *Amended Ruling and Order* ("*Ruling and Order*") (Doc. 50) and associated *Amended Judgment* (Doc. 51),[3] arguing that the Court did not consider Plaintiffs' ERISA and due process claims and failed to apply "Fifth Circuit jurisprudence narrowing the application of *Badgerow*." (Doc. 52 at 1–2.) Plaintiffs reiterate that "[v]irtually all of the[] claims" for which Defendants sought recoupment "were group health benefit claims governed by ERISA." (Doc. 52-1 at 5.) By awarding Defendants the total recoupment amount, the Arbitrator "effectively vacat[ed]" the original benefits determinations— "years after the fact and without patient involvement or notice." (*Id.* at 6.) Plaintiffs insist that the *Amended Motion* asserts, *inter alia*, a claim for breach of fiduciary duty under ERISA and a "procedural challenge to the fairness of" ERISA benefits determinations. (*Id.* at 6–8 (citing, *inter alia*, 29 U.S.C. § 1132(a)(1)(B), (a)(3)).) According to Plaintiffs, such claims "establish[] a separate and independent basis for federal subject matter jurisdiction." (*Id.* at 8.)

Plaintiffs add that *Sentry Insurance v. Morgan*, 101 F.4th 396 (5th Cir. 2024), narrowed *Badgerow* in that the Fifth Circuit determined that jurisdiction appeared "on the face" of the petition. (Doc. 52-1 at 8; *see also id.* at 5 (citing *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789 (5th Cir. 2024)).) According to Plaintiffs, their ERISA and due process claims appear on the face of the *Amended Motion*. (*Id.* at 8–9.) Plaintiffs also posit that the Arbitrator herself violated ERISA. (*See id.* at 9 (arguing that the Arbitrator "ignored ERISA procedure").) Plaintiffs re-assert that, by failing to properly notify Plaintiffs of the recoupment claims, Defendants violated their ERISA duties and

---

[3] The original *Ruling and Order* and *Judgment* (Docs. 47, 48) erroneously dismissed the action with prejudice. The Court's *Amended Ruling and Order* and *Amended Judgment* (Docs. 50, 51) dismissed the action without prejudice.

Plaintiffs' due process rights. (*See id.* at 10–12 (citing, *inter alia*, *La. Health Serv. & Indem. Co. v. Gupta*, 24-264 (La. App. 5 Cir. 2/12/25), 407 So. 3d 851, 864).)

### B.      Defendants' *Opposition* (Doc. 54)

Defendants respond that Plaintiffs mostly "rehash the various arguments and assertions that they made [previously] and which the Court properly rejected." (Doc. 54 at 1.) Alternatively, Plaintiffs make new arguments which should have been made "before the entry of the Court's Ruling." (*Id.* at 2.) "As such, Plaintiffs have not met the high threshold" for reconsideration. (*Id.*)

Defendants emphasize this Court's initial determination that "[a]n exercise of jurisdiction here would require th[e] Court to look through" the *Amended Motion* to the underlying dispute in order to ascertain whether ERISA preempted Defendants' claims. (*Id.* at 4 (quoting Doc. 47 at 11).) They add that *Badgerow* and *Ascension Data & Analytics, L.L.C. v. Pairprep, Inc.*, 105 F.4th 749 (5th Cir. 2024), plainly prohibit doing so. (Doc. 54 at 4.) Further, Plaintiffs "do[] not cite any authority that would allow Plaintiffs to shoehorn additional claims into a motion to vacate an arbitration award proceeding under the FAA." (*Id.* at 5.)

Lastly, Defendants contend that the Fifth Circuit cases cited by Plaintiffs are inapposite. (*Id.* at 6.) In *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, the Fifth Circuit considered whether the district court had *personal jurisdiction* over the defendant. (*Id.* (citing *Conti*, 91 F.4th 789).) And in *Sentry*, the Fifth Circuit determined that diversity jurisdiction was easily ascertainable because the amount in controversy appeared on the face of the petition. (*Id.* (citing *Sentry*, 101 F.4th 396).) Here, by contrast, Plaintiffs' *Amended Motion* did not establish federal question jurisdiction on its face. (*Id.*)

### C.      Plaintiffs' *Reply* (Doc. 57)

Plaintiffs reiterate that, in addition to seeking vacatur, they are bringing claims under

ERISA § 502(a)(1)(B) and/or (a)(3), 29 U.S.C. § 1132(a)(1)(B), (a)(3). (Doc. 57 at 2.) Additionally, "Plaintiffs have . . . alleged multiple due process failures." (*Id.*) Lastly, Plaintiffs contend that the Arbitrator personally "violat[ed] ERISA procedural protections" by "resolving contract-based recoupment claims through a re-determination of medical necessity." (*Id.* at 2, 4–5 (citing *La. Health Serv. & Indem. Co.*, 407 So. 3d 851).) According to Plaintiffs, "[t]he Court's failure to address these issues constitutes a manifest error of law." (*Id.* at 2.)

## III.   RULE 59(E) STANDARD

Although the Federal Rules of Civil Procedure do not clearly recognize motions for reconsideration, *see, e.g.*, *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991), courts have historically considered such motions under, *inter alia*, Rule 59(e), *see, e.g.*, *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991). That rule allows a party to move to alter or amend a judgment within twenty-eight (28) days of entry thereof. Fed. R. Civ. P. 59(e). "District courts have considerable discretion in deciding whether to grant a Rule 59(e) motion." *Omega Hosp., LLC v. United Healthcare Servs., Inc.*, 389 F. Supp. 3d 412, 417 (M.D. La. 2019) (deGravelles, J.) (citing *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993)).

The factors which inform the court's resolution of a motion for reconsideration include: (1) whether the judgment is based on a manifest error of fact or law, (2) whether there is newly discovered or previously unavailable evidence, (3) whether the initial decision was manifestly unjust, (4) whether counsel engaged in serious misconduct, and (5) whether there has been a material intervening change in law. *Id.* (citing *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002)).

A motion for reconsideration "is an extraordinary remedy and should be used sparingly in the interest of finality and conservation of judicial resources." *Id.* at 418 (citing *Carroll v. Nakatani*,

6

342 F.3d 934, 945 (9th Cir. 2003)). "The court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment." *Id.* (citing *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004)). Nor does "[m]ere disagreement" with the original ruling support a motion for reconsideration. *Id.* (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

## IV.    DISCUSSION

### A.    Plaintiffs Fail to Establish Manifest Error

Plaintiffs contend that reconsideration is warranted because the Court's *Ruling and Order* contains manifest errors of fact and law and results in manifest injustice. (*See* Doc. 52 at 1.) At the outset, the Court observes that, while Plaintiffs' arguments have sharpened somewhat, they are by and large the same arguments which Plaintiffs made previously. And the arguments which are new—most conspicuously, the arguments concerning due process—could have been made previously. For this reason alone, the Court is justified in denying Plaintiffs' motion. *See Omega Hosp.*, 389 F. Supp. 3d at 418 (citing *Templet*, 367 F.3d at 478–79) ("The court should deny a motion for reconsideration when the movant rehashes legal theories and arguments that were raised or could have been raised before the entry of the judgment."). Nevertheless, the Court has carefully considered Plaintiffs' arguments (again) and discusses them at length below.

#### 1. Applicable Law

9 U.S.C. § 10 "provides the exclusive grounds" for vacating an arbitral award. *Householder Grp. v. Caughran*, 354 F. App'x 848, 850 (5th Cir. 2009) (per curiam) (citation omitted). Pursuant to this section, "the United States court in and for the district wherein the [arbitral] award was made may make an order vacating the award upon the application of any party to the arbitration" where, *inter alia*, "the arbitrator[] w[as] guilty of misconduct . . . in refusing to hear evidence

7

pertinent and material to the controversy" or "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(3)–(4). Any applications to the Court under the FAA "shall be made and heard in the manner provided by law for the making and hearing of motions, excepts as otherwise . . . expressly provided" by the FAA. *Id.* § 6.

The FAA is somewhat anomalous in that it "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); 9 U.S.C. § 4); *accord Badgerow*, 596 U.S. at 4 ("The [FAA's] authorization of a petition does not itself create jurisdiction."). Thus, "an applicant seeking . . . to vacate an arbitral award under Section 10 [of the FAA] must identify a grant of jurisdiction, apart from Section 10 itself, conferring 'access to a federal forum.'" *Badgerow*, 596 U.S. at 8 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009)). If the applicant cannot do so, then "the action belongs in state court." *Id.* Indeed, state courts play a "'prominent role' in arbitral enforcement." *Id.* (quoting *Vaden*, 556 U.S. at 59); *accord Ascension Data*, 105 F.4th at 753 (citing *Vaden*, 556 U.S. at 59). "[Q]uarrels about legal settlements—even settlements of federal claims—typically involve only state law, like disagreements about other contracts." *Badgerow*, 596 U.S. at 9 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–82 (1994)). Accordingly, such disputes "typically belong[] in state courts." *Id.* at 18 (citing *Kokkonen*, 511 U.S. at 381–82).

A motion to vacate is confined to "the enforceability of [the] arbitral award" and therefore concerns only "the contractual rights provided in the arbitration agreement, generally governed by state law." *Id.* at 9, 18. If a motion to vacate an arbitral award is to be brought in federal court, then an "independent jurisdictional basis" must appear on "the face of the application itself." *Id.* at 9;

*see also Ascension Data*, 105 F.4th at 755 ("Under *Badgerow*, when a party applies to a district court to . . . vacate an arbitral award, [that party] must establish on the face of the application a basis for subject matter jurisdiction separate and apart from the FAA."). As *Badgerow* makes clear, 9 U.S.C. § 10 does not permit the district court to "look through . . . to the underlying substantive dispute" in order to determine whether the court has subject matter jurisdiction. *Badgerow*, 596 U.S. at 9, 11–12. In other words, a district court cannot adjudicate a Section 10 application just because the underlying dispute "could have been brought in federal court." *Id.* at 12.

In recent years, the Fifth Circuit has applied *Badgerow* in a handful of cases. *See, e.g.*, *Ascension Data*, 105 F.4th at 753–755; *Sentry*, 101 F.4th at 399 n.1; *Sullivan v. Feldman*, 132 F.4th 315, 326 n.4 (5th Cir. 2025). The most notable is *Ascension Data*, where a plaintiff asserted federal question jurisdiction based upon (1) the defendant's counterclaims brought during arbitration and (2) the plaintiff's own *res judicata* defense, also raised during arbitration. 105 F.4th at 753 & n.7. The Fifth Circuit affirmed the district court's decision to dismiss for lack of subject matter jurisdiction, explaining that the jurisdictional bases asserted by the plaintiff called for "the exact analysis precluded by *Badgerow*." *Id.* at 753–54. The court emphasized that "[t]he only dispute properly before the district court was the enforceability of the arbitral award." *Id.* at 754. "Because the parties concede[d] that they [we]re not diverse, and because [the plaintiff] offer[ed] no other federal law entitling it to the relief that it s[ought]—vacatur of the award—the enforceability of the arbitral award [needed to] be litigated in state court." *Id.*

## 2. *Analysis*

### a.  No Manifest Errors of Law

The Court will begin with the most straightforward issue: Plaintiffs are incorrect that recent Fifth Circuit jurisprudence "specifically limits . . . cases like *Badgerow* . . . and *Ascension Data*."

(*See* Doc. 52-1 at 2.) Plaintiffs cite just two cases—*Sentry* and *Conti*—in support of their argument. (*See id.* at 5, 8.) While both cases discuss *Badgerow*, neither case is particularly relevant. And more importantly, neither case purports to narrow *Badgerow* or *Ascension Data*.

In *Sentry*, the Fifth Circuit reversed the district court's decision to dismiss for lack of subject matter jurisdiction because the amount in controversy—and, by extension, diversity jurisdiction—appeared "on [the] face" of the petition. 101 F.4th at 399 n.1 (citing *Badgerow*, 596 U.S. at 5). The Fifth Circuit's reasoning in *Sentry* was co-extensive with *Badgerow*'s holding that, "[i]f [a Section 9 or 10 application] shows that the contending parties are citizens of different States (with over $75,000 in dispute), then [28 U.S.C.] § 1332(a) gives the court diversity jurisdiction." *Badgerow*, 596 U.S. at 9. In *Conti*, the Fifth Circuit was quick to point out that *Badgerow* did not apply because it (1) "addressed subject matter jurisdiction, not personal jurisdiction," and (2) dealt with the FAA, not the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *Conti*, 91 F.4th at 793, 796 (citing 9 U.S.C. § 207). The Court therefore rejects Plaintiffs' contention that, in light of these cases, the *Ruling and Order* erroneously interpreted and applied *Badgerow* and *Ascension Data*.[4]

> b. Alleged ERISA and Due Process Violations

The crux of Plaintiffs' *Motion for Reconsideration* is that, because "[v]irtually all" of the relevant underlying claims were "group health benefit claims governed by ERISA," Defendants

---

[4] Relatedly, Plaintiffs contend that this Court's *Ruling and Order* "does not comport with" *Louisiana Health Service & Indemnity Co. v. Gupta*, a state court case involving the same parties, a "virtually identical" contract, and similar claims. (Doc. 52-1 at 1–2 (citing *La. Health Serv. & Indem. Co.*, 407 So. 3d 851); Doc. 57 at 3–4 & n.7.) As Defendants note in their *Opposition*, it is unclear why this state court case would warrant reconsideration here. (*See* Doc. 54 at 5–6 ("This decision does not relate to . . . federal subject matter jurisdiction . . . .").) Plaintiffs press the fact that the Louisiana Fifth Circuit Court of Appeals construed La. R.S. § 22:1838 in a way unfavorable to Defendants. (Doc. 57 at 3–4.) They further argue that the state court case confirms that Defendants' recoupment theory at arbitration was a legal fiction devised to bypass ERISA. (*Id.* at 4.) But for substantially the same reasons given in Section IV.A.2.b, *infra*, these contentions require the Court to look through to the underlying dispute. Nothing in *Louisiana Health Service & Indemnity Co.* suggests to this Court that its *Ruling and Order* contains manifest errors of fact or law.

and the Arbitrator were effectively making adverse benefits determinations. (Doc. 52-1 at 5–6.) The upshot, Plaintiffs say, is that they have brought—or can bring—additional claims for ERISA and due process violations. (*See, e.g.*, *id.* at 6 ("Plaintiffs' Amended Motion to Vacate not only seeks to vacate the arbitration award, but asserts independent bas[e]s for federal jurisdiction pursuant to ERISA . . . and under due process laws."); *id.* at 12 ("The claims to be evaluated under the well-pleaded complaint rule are not the underlying claims that BCBSLA brought in the arbitration, but Plaintiffs' claims brought pursuant to this action."); Doc. 57 at 2 ("Plaintiffs have filed claims under ERISA for benefits under Section 502(a)(1)(B) and/or for breach of fiduciary duty under Section 502(a)(3).").) According to Plaintiffs, these additional claims "establish federal jurisdiction on the face of the Amended Motion." (Doc. 52-1 at 7.)

The Court sees at least two issues with Plaintiffs' contention. First, the Court disagrees with Plaintiffs' apparent understanding of the term "independent jurisdictional basis." *See, e.g.*, *Badgerow*, 596 U.S. at 8 (quoting *Hall St. Assocs.*, 552 U.S. at 582). Again, a Section 10 application must "be made and heard in the manner provided by law for the making and hearing of *motions*." 9 U.S.C. § 6 (emphasis added). Accordingly, Plaintiffs have filed a freestanding motion to vacate the arbitral award. (Doc. 12; *see also* Doc. 54 at 5.) To the extent that Plaintiffs seek to bring additional claims (e.g., for alleged ERISA and due process violations), such claims "amount to the filing of a complaint accompanying [Plaintiffs'] original motion to vacate . . . [the] arbitration award." *See Mitchell v. Frattini*, No. 22-2352, 2022 WL 17157027, at *3 (S.D.N.Y. Nov. 22, 2022); *Rising Star Inc. v. Amazon.com Inc.*, No. 23-778, 2023 WL 3597617, at *3 n.2 (S.D.N.Y. May 23, 2023). "This is procedurally improper . . . ." *See Mitchell*, 2022 WL 17157027, at *3; *cf. ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012) (explaining that, due to 9 U.S.C. § 6, the defendant "could not have filed an answer . . . any more than [the

11

plaintiff] could have filed a complaint"); *Batiste v. Lewis*, 976 F.3d 493, 501 (5th Cir. 2020) (distinguishing between pleadings and motions). Here, Plaintiffs are limited to their motion.

Second, even if the Court considers whether Plaintiffs' *Amended Motion* merely "establish[es] federal jurisdiction on [its] face" (as opposed to whether Plaintiffs have properly brought additional claims), (*see* Doc. 52-1 at 7), *Badgerow* and its progeny circumscribe the Court's review. And Plaintiffs' arguments plainly call for the Court to "look through" the *Amended Motion* to the underlying dispute—e.g., to determine whether the relevant claims arose out of ERISA plans, to determine whether Defendants and, by extension, the Arbitrator violated ERISA and Plaintiffs' due process rights.[5] *See, e.g.*, *Ascension Data*, 105 F.4th at 753–54 & n.7.[6] In other words, Plaintiffs ask this Court to perform "the exact analysis precluded by *Badgerow*." *See id.* at 753–54; *see also Hursh v. DST Sys., Inc.*, 54 F.4th 561, 564–65 (8th Cir. 2022) ("Although the arbitration awards at issue were based upon breach of DST's fiduciary duties under ERISA, without a look-through to this underlying ERISA controversy that is foreclosed by *Badgerow*, Plaintiffs' Section 9 applications only concern 'the contractual rights provided in the arbitration agreement, generally governed by state law.'" (quoting *Badgerow*, 596 U.S. at 18)).[7]

---

[5] Plaintiffs' *Motion for Reconsideration* alleges that the Arbitrator "ignored ERISA procedure." (Doc. 52-1 at 9.) The Court understands Plaintiffs to be arguing not that the Arbitrator was an ERISA entity—or that arbitration was the product of an ERISA-governed contract—but rather that the Arbitrator's failure to join indispensable parties (e.g., impacted patients) compounded Defendants' failure to issue adverse benefits determinations and notices of appeal rights. (*See id.* at 9–12 ("[H]ere the arbitrator's actions not only rescinded the BCBSLA prior benefit determinations provided to . . . plan participants, but did so retroactively[,] . . . when . . . appeals were no longer timely under plan terms.").) Plaintiffs' argument that the Arbitrator violated ERISA is therefore part and parcel of the underlying dispute.
[6] In *Ascension Data*, the plaintiff contended that "the district court had independent jurisdiction to determine the preclusive effect of a federal judgment." *Ascension Data*, 105 F.4th at 753 n.3. The Fifth Circuit rejected this argument as "an attempt to relitigate a res judicata defense that was first raised—and rejected—during the arbitration proceeding." *Id.* The court concluded: "Necessarily, the district court would have had to look through the application . . . to the res judicata defense in the underlying arbitration to establish its jurisdiction on this basis. It correctly declined to do so." *Id.* (citing *Badgerow*, 596 U.S. at 9). Similarly, Plaintiffs here contend that this Court has independent jurisdiction over the alleged ERISA violations. (*See* Doc. 52-1 at 8–9.) While Plaintiffs seek to distinguish *Ascension Data* on the grounds that, here, the alleged ERISA violations "were not addressed in the arbitration proceeding," (*see id.*), it is clear to the Court that the alleged violations are bound up with the underlying dispute, not the "the contractual rights provided in the arbitration agreement," *see Badgerow*, 596 U.S. at 9, 18.
[7] Plaintiffs also take issue with the Court's determination that the *Amended Motion* "merely" sought vacatur under 9 U.S.C. § 10 and that "any attempted assertion of independent federal jurisdiction [wa]s an attempt to relitigate the

### B.    Leave to Amend

#### 1.  *Applicable Law*

"In the Fifth Circuit, when a district court dismisses the complaint, but does not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the district court." *Omega Hosp.*, 389 F. Supp. 3d at 425 (citing *Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992)). But when a district court dismisses the complaint and enters a final judgment, the plaintiff must seek leave to amend by appealing the judgment or by seeking to alter or re-open the judgment under Rule 59 or Rule 60. *Id.* (citing, *inter alia*, *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981)); *see also* 6 *Wright & Miller's Federal Practice & Procedure* § 1489 (3d ed. 2025). In this situation, the plaintiff's motion for reconsideration "should be governed by the same considerations controlling the exercise of discretion under [R]ule 15(a)." *Dussouy*, 660 F.2d at 597 n.1; *see also Rourke v. Thompson*, 11 F.3d 47, 51 (5th Cir. 1993) (applying the Rule 15 standard where the district court had entered "[f]inal judgment (dismissal *without prejudice*)" (emphasis in original)).

"[L]eave to amend should be liberally granted, when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) (quoting *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 468 (5th Cir. 2023)); *see also* Fed. R. Civ. P.

---

underlying case." (Doc. 57 at 3 (quoting Doc. 47 at 11).) Plaintiffs argue that, "[i]f the desire to vacate an arbitral award negated federal jurisdiction, there would be no FAA." (*Id.*) This contention misconstrues the Court's *Ruling and Order*. The Court did not suggest that, by seeking vacatur, a plaintiff negates federal jurisdiction. Rather, the Court observed that, here, Plaintiffs' jurisdictional statement depended upon the Court's looking through to the underlying dispute in order to ascertain, e.g., whether there were any ERISA plans and, if so, whether Defendants breached any associated fiduciary duties. (*See* Doc. 50 at 10–11.) In other words, Plaintiffs did not supply an independent basis for federal jurisdiction. The Court was bound to read Plaintiffs' *Amended Motion* as merely invoking 9 U.S.C. § 10. And again, it is well established that the FAA "bestow[s] no federal jurisdiction but rather requir[es] an independent jurisdictional basis." *Hall St. Assocs.*, 552 U.S. at 581–82 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 n.32; 9 U.S.C. § 4); *accord Badgerow*, 596 U.S. at 4 (citing *Hall St. Assocs.*, 552 U.S. at 582).

15(a)(2) ("The court should freely give leave when justice so requires."). The Fifth Circuit has applied its amendment policy in situations where plaintiffs have "presented enough information to suggest that [they] could replead and satisfy the [Rule 12(b)] standard." *See Ass'n of Am. Physicians & Surgeons*, 103 F.4th at 394 (citing *Hernandez*, 79 F.4th at 468–69). But the Fifth Circuit's "generous" policy is tempered somewhat by the district court's "necessary" case-management power. *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987). Thus, in deciding whether to grant leave to amend, the district court may consider factors such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of the amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)); *see also DeGruy v. Wade*, 586 F. App'x 652, 655–56 (5th Cir. 2014) (per curiam).

### 2. Analysis

Here, the bulk of Plaintiffs' *Motion for Reconsideration* urges this Court to reverse course—that is, to determine that Plaintiffs' *Amended Motion* includes an independent jurisdictional basis. (*See, e.g.*, Doc. 52-1 at 14.) In the alternative, however, Plaintiffs "seek this Court's leave to amend their complaint to correct any pleading deficiencies." (*Id.*) Notably, Plaintiffs do not identify any grounds for amendment. (*See id.*) Given the reference to a "complaint," the Court surmises that Plaintiffs seek leave to amend under Rule 15(a)(2).

It bears repeating: There is no complaint here. Pursuant to 9 U.S.C. § 6, "[a]ny application to the court [under the FAA] shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise . . . expressly provided [by the FAA]." Consistent with this provision, Plaintiffs have filed a freestanding motion to vacate the arbitral award. (*See* Docs. 1, 12.) Of course, that motion is not a pleading. *See* Fed. R. Civ. P. 7 (distinguishing between motions and pleadings). Consequently, Rule 15(a)(2) does not apply to it. *See* Fed. R. Civ. P.

14

15(a)(2) ("[A] party may amend its *pleading* . . . [with] the court's leave." (emphasis added)); *see also Batiste*, 976 F.3d at 501 ("Rule 15(a)'s lenient standard only applies to 'pleadings.'").

Indeed, several circuits—and many more district courts—have called into doubt whether there exists a right to amend a motion to vacate, confirm, or modify an arbitral award. *See, e.g.*, *Chelmowski v. AT & T Mobility, LLC*, 615 F. App'x 380, 381 (7th Cir. 2015) ("[B]ecause Chelmowski's request to vacate is properly construed as a motion rather than a complaint, he had no right under Rule 15(a)(1)(B) to amend his filing once as a matter of course."); *Loch View LLC v. Seneca Ins. Co.*, No. 21-1008, 2022 WL 1210664, at *2 (2d Cir. Apr. 25, 2022) (summary order) ("[W]e doubt that Loch View can avail itself of the generous Rule 15(a) standards . . . with respect to its motion to vacate the arbitration award, which it concedes is *not* a pleading."); *Indep. Lab'y Employees' Union, Inc. v. ExxonMobil Rsch. & Eng'g Co.*, No. 18-10835, 2019 WL 3416897, at *6–7 (D.N.J. July 29, 2019) ("Because there are no 'pleadings' in an FAA proceeding, the right to amend . . . under Rule 15 is not applicable."), *aff'd*, 11 F.4th 210 (3d Cir. 2021); *see also ISC Holding*, 688 F.3d at 112 (noting that the Federal Rules of Civil Procedure "draw a clear and consistent distinction between pleadings and motions," which "precludes treating the one as the other" (emphasis omitted)); *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-7331, 2024 WL 4100555, at *18, *20 & n.16 (S.D.N.Y. Sept. 6, 2024) (explaining that "the law under Rule 15(a)(2) sits uneasily with the [FAA's] objective" of confirming or vacating arbitral awards "in an expedited manner"); *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 632–35 (S.D. Tex. 2009) (narrowing *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988)).

Even if this Court were to consider Plaintiffs' request under Rule 15(a), *see Bonar*, 835 F.2d at 1382, it would deny Plaintiffs leave to amend. While this Court is mindful of the Fifth Circuit's generous policy, Plaintiffs' briefs—and an independent, extensive review of relevant

15

cases, *see, e.g.*, *Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Global Advisors, LLC*, 102 F.4th 572, 595–602 (2d Cir. 2024)[8]—both persuade this Court that, here, amendment would be futile, *see Shivangi*, 825 F.2d at 891; *see also Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (explaining "futility"); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.").

For one, Plaintiffs have already amended their motion to vacate the arbitral award once—for the specific purpose of establishing subject matter jurisdiction. *See also Loch View*, 2022 WL 1210664, at *2 (suggesting that such an opportunity to amend was not, given the context, guaranteed by Rule 15(a)). Further, Plaintiffs' request for leave to amend is "bare bones." *See, e.g.*, *Porretto v. City of Galveston Park Bd. of Trs.*, 113 F.4th 469, 491–92 (5th Cir. 2024) (quoting *Edionwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017)). Presumably, Plaintiffs seek leave to amend in order to add the federal claims which they have raised in, *inter alia*, their *Motion for Reconsideration*. (*See* Doc. 52-1 at 14 (seeking leave to amend "to the extent that Plaintiffs' ERISA based claims require further clarification").) But as already discussed, Plaintiffs cannot tack separate-but-related federal claims onto their motion to vacate the arbitral award. *See Mitchell*, 2022 WL 17157027, at *3 (citing *ISC Holding*, 688 F.3d at 112). And for reasons above, Plaintiffs'

---

[8] In *Trustees of New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, the Second Circuit reasoned that the motion to confirm the arbitral award satisfied federal question jurisdiction on its face because the relevant arbitration agreement was "contained within an ERISA-governed contract between two co-fiduciaries to an ERISA plan"—that is, between "core ERISA entities." 102 F.4th at 595, 598–99, 601–02 & n.13. Here, by contrast, the 2019 Physician Agreement is a contract between BCBSLA and Pain Management and Surgi-Group, LLC, "a duly licensed physician in the State of Louisiana." (*See* Doc. 1-2 at 1.) The contract does not mention ERISA. (*See id.* at 1–36.) And Plaintiffs have at least tacitly acknowledged that the contract governs more than just ERISA plans. (*See* Doc. 12 at 2 (asserting that most—but not all—of the underlying claims "arose under group employee health benefit plans governed by ERISA").) Nor does Plaintiffs' *Amended Motion* give the Court some other reason to suspect that the arbitration clause contained within the 2019 Physician Agreement, (Doc. 1-2 at 21–24), was governed by federal law, *see Trs. of N.Y. State Nurses Ass'n*, 102 F.4th at 598; *see also HMO La. Inc. v. Gupta*, No. 21-522, 2021 WL 2678933, at *1, *4–5 (E.D. La. June 30, 2021) (remanding to state court a similar case involving a similar physician agreement between the same parties).

ERISA and due process arguments also cannot function as mere independent jurisdictional bases, because they necessarily require this Court to look through the *Amended Motion* to the underlying dispute. *See Ascension Data*, 105 F.4th at 753–54 & n.7; *cf. Trs. of N.Y. State Nurses Ass'n*, 102 F.4th at 594–97. Plaintiffs' numerous filings—the original motion and supporting memorandum, the *Amended Motion*, the *Opposition* to Defendants' motion to dismiss for lack of subject matter jurisdiction, the *Motion for Reconsideration*, the *Reply*—have failed to suggest an adequate federal hook. And for its part, the Court can discern none.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that *Plaintiffs' Motion for Reconsideration/New Trial* (Doc. 52) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 30, 2026</u>.

 

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**